```
                    IN THE UNITED STATES DISTRICT COURT
                FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                              AT CHARLESTON


_____x
                              :
UNITED STATES OF AMERICA,      :          Criminal Action
                              :
              Plaintiff,       :          No.  2:14-cr-00276
                              :
v.                            :
                              :          Date:  March 18, 2015
MICHAEL BURDETTE,              :
                              :
              Defendant.       :
_____x
```

```
                   TRANSCRIPT OF PLEA HEARING HELD
           BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
                   UNITED STATES DISTRICT COURT
                    IN CHARLESTON, WEST VIRGINIA
```

APPEARANCES:

For the Government:          AUSA PHILIP H. WRIGHT
                             AUSA LARRY D. ELLIS
                             AUSA ERIC P. BACAJ
                             U.S. Attorney's Office
                             P.O. Box 1713
                             Charleston, WV  25326-1713

For the Defendant:          SUSAN M. ROBINSON, ESQ.
                             Thomas Combs & Spann
                             P. O. Box 3824
                             Charleston, WV 25338-3824

Probation Officer:          Matthew Lambert


Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.

1    PROCEEDINGS had before The Honorable Thomas E. Johnston,

2    Judge, United States District Court, Southern District of West

3    Virginia, in Charleston, West Virginia, on March 18, 2015, at

4    10:11 a.m., as follows:

5         COURTROOM DEPUTY CLERK:  The matter before the Court is

6    the United States of America versus Michael Burdette, criminal

7    action number 2:14-cr-00276, scheduled for a plea hearing.

8         THE COURT:  Good morning.  Will counsel please note

9    their appearances?

10        MR. WRIGHT:  Good morning, Your Honor.  Philip Wright

11   and Eric Bacaj on behalf of the United States, and seated at

12   counsel table is Special Agent Nick Gillespie.

13        MS. ROBINSON:  Good morning, Your Honor.  Susan

14   Robinson on behalf of the defendant, Michael Burdette, who is

15   present in person at counsel table.

16        THE COURT:  Good morning.

17      Mr. Burdette, will you please stand, and I will ask the

18   deputy clerk to administer an oath to you at this time.

19        COURTROOM DEPUTY CLERK:  Please raise your right hand.

20           **MICHAEL BURDETTE, DEFENDANT, SWORN**

21        THE COURT:  You may be seated.

22      Mr. Burdette, do you understand that you are now under oath

23   and you must tell the truth and, if you testify falsely, you may

24   face prosecution for perjury or for making a false statement?

25        THE DEFENDANT:  Yes, sir.

1          THE COURT:  All right.  Throughout the course of this

2     hearing, I'm going to be asking you a number of questions and I

3     want to make sure that you and I are communicating clearly.  So,

4     if at any time I ask a question that you don't understand or

5     anything else occurs in this hearing that you don't understand, I

6     want you to feel free to speak up and seek clarification.

7          Also, if at any time you need to confer with your attorney,

8     I'll be pleased to pause the proceedings to allow you to do so.

9          Do you understand all that?

10          THE DEFENDANT:  Yes, sir.

11          THE COURT:  All right.  Let me begin by asking you, how

12     old are you?

13          THE DEFENDANT:  60 years old.

14          THE COURT:  And can you briefly describe your

15     educational background?

16          THE DEFENDANT:  I have a B. S., a Mechanical

17     Engineering Degree from West Virginia Institute of Technology.  I

18     also have nine hours towards an M. B. A.

19          THE COURT:  For the record, can you read and write and

20     understand the English language?

21          THE DEFENDANT:  I'm sorry, Your Honor, I didn't --

22          THE COURT:  I said, for the record, can you read and

23     write and understand the English language?

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  All right.  And can you briefly describe

1    your work experience?

2          THE DEFENDANT:  I have 30-plus years of experience in

3    engineering-related positions in the construction, nuclear and

4    chemical industries.

5          THE COURT:  Have you taken any medicine or drugs or

6    consumed any alcoholic beverages within the last 24 hours?

7          THE DEFENDANT:  No, sir.

8          THE COURT:  Including prescription drugs?

9          THE DEFENDANT:  I have my prescription that I take.

10   It's a topical, AndroGel.

11         THE COURT:  Oh, all right.  And have you taken that in

12   the last 24 hours?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  And, to the best of your knowledge, are you

15   suffering from any side effects from that medication that would

16   in any way affect your ability to fully participate in this

17   hearing today?

18         THE DEFENDANT:  No, sir.

19         THE COURT:  Have you ever been treated for any mental

20   illness or addicted to drugs of any kind?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Do you know where you are and why you are

23   here today?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Do you have any hearing impairment or other

1    disability which would prevent you from fully participating in
2    this hearing today?
3             THE DEFENDANT:  I can participate.  I do have hearing
4    loss and I wear a hearing aid, so I just want to make you aware
5    of that.
6             THE COURT:  Have you had any trouble -- other than a
7    moment ago when I may have mumbled a little bit, have you had any
8    trouble hearing me today?
9             THE DEFENDANT:  No, sir.
10            THE COURT:  All right.  If you do have trouble hearing
11   me or anyone else that is speaking today, I want you to
12   immediately let us know, because it's important that you hear and
13   understand everything that occurs in this hearing.  Do you
14   understand?
15            THE DEFENDANT:  Yes, sir.
16            THE COURT:  All right.
17       Ms. Robinson, do you have any reason to question the
18   competence of your client?
19            MS. ROBINSON:  I do not, Your Honor
20            THE COURT:  All right.  I believe I've been provided
21   with the original of the plea agreement.
22       Mr. Wright, has that changed in any way since the courtesy
23   copy that was provided to my chambers?
24            MR. WRIGHT:  No, Your Honor.
25            THE COURT:  All right.  Very well.

1      Mr. Burdette, is that your signature that appears on the

2 seventh and final page of the plea agreement itself?

3           THE DEFENDANT:  Yes, Your Honor.

4           THE COURT:  And are those your initials that appear on

5 the other pages of the plea agreement?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  And have you read and reviewed with your

8 counsel each of the 15 paragraphs of the plea agreement and the

9 exhibits attached to the plea agreement?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And do you wish to have the various terms

12 of the plea agreement orally stated on the record, or do you

13 believe that that's unnecessary?

14          THE DEFENDANT:  I believe it's unnecessary.

15          THE COURT:  And do you understand and agree with all of

16 the terms and provisions contained in the plea agreement?

17          THE DEFENDANT:  Yes, Your Honor.

18          THE COURT:  And, Ms. Robinson, have you reviewed with

19 your client each of the 15 paragraphs of the plea agreement and

20 the exhibits attached thereto?

21          MS. ROBINSON:  I have, Your Honor.

22          THE COURT:  Ms. Robinson and Mr. Wright, is there any

23 reason why either of you believe that the various terms of the

24 plea agreement should be orally stated on the record?

25          MR. WRIGHT:  I do not, Your Honor.

1          MS. ROBINSON:  No, Your Honor.

2          THE COURT:  All right.  Nonetheless, Mr. Burdette,

3    there are some provisions of the plea agreement that I want to

4    discuss with you, starting on Page 3 with Section 9, which is

5    entitled "Stipulation of Facts and Wavier of Federal Rules of

6    Evidence 410".

7       Now, this section -- and it us runs over onto Page 4.  This

8    section relates to a couple of different matters, the first of

9    which is the Stipulation of Facts, which is attached as Exhibit B

10   to the plea agreement, and I want to turn your attention to that

11   document now.

12      That is a six-page document and, on the sixth page, is that

13   your signature which appears there?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  And have you read the Stipulation of Facts?

16          THE DEFENDANT:  Yes, Your Honor.

17          THE COURT:  And do you agree that all the facts

18   contained in the stipulation are true?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  A little bit about what will be

21   happening from here on out.  I will be asking the probation

22   officer to prepare a Presentence Investigation Report.  That

23   report will contain detailed recommended factual findings

24   regarding this offense and your background, among other things.

25      Ultimately, at sentencing, I will make factual findings

1  based at least in part on the recommendations contained in the

2  Presentence Report.

3      Now, you and the government have reached an agreement

4  regarding certain facts contained in this stipulation, but I want

5  you to understand that in this process, neither the probation

6  officer, nor this Court, are bound by that Stipulation of Facts.

7  Do you understand that?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Do you further understand that if I make

10  findings of fact at sentencing that are different from or

11  inconsistent with the facts contained in the stipulation, you

12  will still be bound by your guilty plea and would have no right

13  to withdraw it?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  All right.  The other matter addressed in

16  Section 9 is a Waiver of Federal Rule of Evidence 410.

17      Now, first of all, do you understand that a "waiver" is a

18  legal term that means you're giving something up?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  All right.  Now, Rule 410 generally

21  provides that information or documents regarding plea

22  negotiations, and this Stipulation of Fact would fall into that

23  category, that is -- those are generally not admissible at trial;

24  in other words, the government can't use those sorts of things

25  against you at trial.

1          However, if you withdraw from this plea agreement or it's no

2     longer any good because you have violated one or more of its

3     terms and there is a subsequent trial, under this waiver, the

4     government would be allowed to present the Stipulation of Facts

5     in its case in chief or for other purposes at that trial.

6          Do you understand that waiver?

7               THE DEFENDANT:  Yes, Your Honor.

8               THE COURT:  All right.  Next, I want to refer you to

9     Section 10 of the plea agreement, which appears on Page 4, and is

10    entitled "Agreement on Sentencing Guidelines".

11         Now, before we get into this, I want to ask you, has your

12    attorney talked with you about the federal sentencing guidelines

13    and how they generally work?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  And has she shown you that chart in the

16    back of the book?

17              THE DEFENDANT:  Yes, Your Honor.

18              THE COURT:  Well, working from that, I want to have a

19    similar discussion with you.

20         If you'll recall from the chart, there's a series of numbers

21    that run from low to high on the left side of the page as you go

22    down.  Those are offense levels, and the offense level is

23    calculated by a starting with a Base Offense Level, which is a

24    starting point, and then that number can be adjusted upward or

25    downward, depending on the facts and circumstances of the case,

1    to arrive at an adjusted offense level.

2        Then consideration is given -- generally given for a

3    reduction for acceptance of responsibility.  Has your attorney

4    talked with you about that?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  All right.  Then, you generally arrive at a

7    Total Offense Level.  Then, you go up to the top of the chart and

8    there are six criminal history categories, and you would fall

9    into one of those, depending on the number of points, if any,

10   assigned to any prior convictions that you may have.

11       Then you combine the criminal history category and the Total

12   Offense Level and arrive at a point in the chart that gives a

13   range of months of imprisonment.  Certain parts of the chart

14   allow for certain alternatives to imprisonment.

15       Do you understand all of these things about the guidelines

16   so far?

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  All right.  Once we calculate that

19   guideline range, I have the authority to sentence you within that

20   range.  I also have the authority to sentence you, under some

21   circumstances, outside of that range, either above it or below

22   it.

23       If I sentence you outside of the range based on factors

24   identified in the guidelines themselves, that's generally known

25   as a departure.  If I sentence you outside of the range based on

1    factors outside of the guidelines, that's generally known as a

2    variance.

3        Do you understand all of these things I have discussed with

4    you about the guidelines?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Has your attorney explained all of these

7    things to you, as well?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  All right.  Well, with all of that in mind,

10   Section 10 contains an agreement on the guidelines that you have

11   reached with the government.  Now, this is similar to the

12   Stipulation of Facts in that there will be a recommended

13   guideline calculation in the Presentence Report that the

14   probation officer will prepare and, ultimately, I will make

15   guideline findings at sentencing based at least in part on those

16   recommendations.

17       Now, even though you have reached an agreement with the

18   government here in Section 10, I want you to understand that,

19   once again, that in this process, neither the probation officer,

20   nor this Court, are bound by that agreement on the guidelines.

21   Do you understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  Do you further understand that if I make

24   guideline findings at sentencing that are different from or

25   inconsistent with this agreement on the guidelines, you will

1    still be bound by your guilty plea and would have no right to

2    withdraw it?

3              THE DEFENDANT:  Yes, Your Honor.

4              THE COURT:  All right.  Next, I want to refer you to

5    Section 11 of the plea agreement, which starts on Page 4 and runs

6    over onto Page 5, and it's entitled "Waiver of Appeal and

7    Collateral Attack".

8         Now, this section relates to a couple of different

9    procedures that I want to go over with you briefly.

10        An "appeal" is a procedure by which a party to a case before

11   a District Court like this one and, in a criminal case, it is

12   often the defendant, goes to the Court of Appeals, or the next

13   level up of the court system, and argues that certain errors or

14   mistakes may have taken place in their criminal case before the

15   District Court.

16        A "collateral attack" is similar, but it is a separate civil

17   case that may be filed after a criminal case is over and it's

18   sometimes referred to as a "habeas corpus petition" in which the

19   defendant may also argue that certain errors or mistakes took

20   place in their criminal case before the District Court.

21        Now do you understand those two procedures, at least as I've

22   briefly described them to you?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  All right.  Secondly, I would like to

25   explain to you that there are two phases to a criminal case

1    generally.

2        The first phase is the guilt or innocence phase in which

3    that determination is made.  It starts at the very beginning of

4    the case and includes all proceedings up to the point where that

5    determination is made.  Sometimes, guilt or innocence is

6    determined by a trial.  Much more often, it is determined by a

7    guilty plea, like what we're doing today.

8        Once a finding of guilt has been made, then we go to the

9    penalty phase in which, obviously, the penalty for the crime is

10   determined, and that generally concludes with a sentencing

11   hearing at the end of the case.

12       Now do you understand the two phases of a criminal case as

13   I've described them to you?

14           THE DEFENDANT:  Yes, Your Honor.

15           THE COURT:  All that.  With all that in mind then,

16   Section 11 contains -- the first paragraph contains an appeal

17   waiver and I want to go over that with you now.

18       Do you understand that you waive the right to appeal your

19   conviction and any sentence of imprisonment, fine or term of

20   supervised release, or the manner in which the sentence was

21   determined on any ground whatsoever, with two exceptions:

22       One, you may appeal any sentence of restitution ordered as a

23   condition of supervised release;

24       And, two, you may appeal any sentence that is greater than

25   the maximum penalty set forth by statute.

```
 1        Do you understand that waiver?

 2            THE DEFENDANT:  Yes, Your Honor.

 3            THE COURT:  Anything about it that you don't understand

 4    or that you have questions about?

 5            THE DEFENDANT:  No, Your Honor.

 6            THE COURT:  Do you also understand that under the

 7    second paragraph of Section 11, you may not file a later civil

 8    proceeding, sometimes referred to as a "habeas corpus petition",

 9    or a "collateral attack", challenging your plea, conviction or

10    sentence?  Do you understand that?

11            THE DEFENDANT:  Yes, Your Honor.

12            THE COURT:  Finally, do you understand that you are in

13    no event waiving your right to claim ineffective assistance of

14    counsel, either on appeal or by collateral attack?

15            THE DEFENDANT:  Yes, Your Honor.

16            THE COURT:  All right.  Next, I want to refer you to

17    Section 12 of the plea agreement, which appears on Page 5 and

18    it's entitled "Waiver of FOIA and Privacy Right".

19        Now, this waiver means you can't go back after this case is

20    over and seek documents or other information about the case from

21    the government even with a Freedom of Information Act request.

22    Do you understand that waiver?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  All right.  Ms. Robinson, have

25    you thoroughly reviewed the plea agreement with your client?
```

1          MS. ROBINSON:  Yes, Your Honor, I have.

2          THE COURT:  And do you believe that he fully

3    understands the various terms and provisions of the plea

4    agreement, including the waivers and other matters that I have

5    gone over with him today?

6          MS. ROBINSON:  Yes, he does.

7          THE COURT:  Mr. Burdette, have you reviewed the plea

8    agreement in detail with your attorney?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  Do you believe that you have had adequate

11    time to discuss your case fully with your attorney?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  Has your attorney answered any questions

14    that you have had about your case?

15          THE DEFENDANT:  Yes, Your Honor.

16          THE COURT:  Ms. Robinson, during your representation of

17    the defendant, has he been cooperative?

18          MS. ROBINSON:  He has been, Your Honor.

19          THE COURT:  Mr. Burdette, has anything further been

20    agreed to, either orally or in writing, that is not contained in

21    the plea agreement?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  All right.  I will order that the plea

24    agreement be filed.

25       I will find that the defendant understands and agrees with

1  the terms and conditions contained in the plea agreement.

2  I will defer accepting or rejecting the plea agreement until

3  sentencing, after the Presentence Report has been received and

4  considered.

5  Just to check, Mr. Burdette, have you been able to hear

6  everything I said okay?

7  THE DEFENDANT:  Yes, Your Honor.

8  THE COURT:  Okay.  Very well.

9  Have you received and read and reviewed with your attorney

10  the single-count information, or charging document, that has been

11  presented in this case?

12  THE DEFENDANT:  Yes, Your Honor.

13  THE COURT:  And do you understand the charges contained

14  in the information?

15  THE DEFENDANT:  Yes, Your Honor.

16  THE COURT:  Would you like me to read the information

17  to you or will you waive the reading of the information?

18  THE DEFENDANT:  We'll waive the reading.

19  THE COURT:  All right.  As I understand it, you will be

20  pleading guilty to a single-count information, which charges you

21  with negligent discharge of a pollutant in violation of 33 U. S.

22  C. Section 1319(a)(1)(A) [sic] and 1311.  Now, I want to go over

23  that charge and those statutes with you in just a little bit more

24  detail.

25  Section 1319(c)(1)(A) -- I'm sorry -- I said "(A)" earlier,

1     (c)(1)(A) provides in pertinent part that:

2       "Any person who negligently violates Section 1311 of this

3     title shall be punished by a fine of not less than $2,500.00, nor

4     more than $25,000.00 per day of violation, or by imprisonment for

5     not more than one year, or by both."

6       Now, Section 1311 provides that:

7     "Except as in compliance with this section and Section 1312,

8     1316, 1317, 1328, 1342 and 1344 of this title, the discharge of

9     any pollutant by any person shall be unlawful."

10     Now, in order to prove this charge against you, the

11    government would have to prove the following elements of the

12    crime, each beyond a reasonable doubt, and they are:

13     First, that a pollutant was discharged from a point source

14    into waters of the United States;

15     And, second, that the discharge did not occur pursuant to a

16    Clean Water Act permit;

17     And, finally, your negligent conduct proximately caused the

18    discharge.

19     Now, I want to share with you some definitions that apply to

20    what I have just told you.

21     A "pollutant" includes solid wastes, chemical wastes, and

22    industrial, municipal, and agricultural wastes.

23     To "discharge" means to add to the navigable waters of the

24    United States, the contiguous zone, or the ocean.

25     The term "navigable waters of the United States" includes

interstate waters, waters which have been or may be susceptible to use in interstate commerce, and tributaries of such waters.

A "point source" means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged.

A "Clean Water Act permit" is a permit issued under the National Pollutants Discharge Elimination System by the federal government or a state government.

An act is done with "negligence" when a person fails to exercise the degree of care that a person of ordinary prudence would have exercised in similar circumstances.

Under the "responsible corporate officer" doctrine, the United States does not need to prove that you personally participated in the wrongful act.  If you were a corporate officer who had responsibility and authority either to prevent the violation, or to promptly correct the violation, you may be held individually responsible.  A corporate officer need not, in fact, exercise his or her authority, and the corporation need not expressly vest a duty in the officer to oversee the activity to be deemed a responsible corporate officer.

Are there any objections to the elements and definitions as I have described them?

```
1                 MR. WRIGHT:  No, Your Honor.

2                 MS. ROBINSON:  No, Your Honor.

3                 THE COURT:  All right.  Next, I want to go over with

4       you the maximum and any minimum sentences you may face as a

5       result of your plea, and that is, a maximum term of imprisonment

6       of one year; a fine of not less than $2,500.00, nor more than

7       $25,000.00 per day of violation; alternatively, a maximum fine of

8       $100,000.00, or twice the gross pecuniary gain or loss resulting

9       from your conduct, whichever is greater; and a maximum term of

10      supervised release of one year.  A mandatory special assessment

11      of $25.00 would be required; and restitution could be order, if

12      it were found to be applicable.

13          Next, I want to return to our discussion of the guidelines.

14      They are advisory, meaning they're not mandatory or don't have to

15      be followed, but they'll nevertheless play an important role in

16      your case from here on out.

17          This Court will consider the facts set forth in 18 U. S. C.

18      Section 3553(a), including the advisory guidelines in determining

19      the appropriate sentence in your case.

20          I now want to ask you some questions that will help me to

21      understand your understanding of the advisory guidelines.

22          Have you discussed with your attorney the various factors

23      which apply in determining what the sentence in your case may be

24      under the advisory guidelines?

25                 THE DEFENDANT:  Yes, Your Honor.
```

1          THE COURT:  And do you understand that, on this

2     single-count information, you cannot in any event receive a

3     greater sentence than the statutory maximum that I explained to

4     you earlier?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Do you understand that the Court will not

7     determine a sentence for your case until a later date, when a

8     Presentence Report has been completed, and both you and the

9     government have had an opportunity to challenge the facts and

10    analysis reported by the probation officer?

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Do you understand that under a concept

13    known as "relevant conduct", this Court, in determining the Total

14    Offense Level for sentencing purposes under the guidelines may

15    take into account any conduct, circumstances or injuries relevant

16    to the crime of which may be convicted?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Do you understand that after the Court has

19    determined what advisory guidelines apply to your case, the Court

20    has the authority to vary or depart from the advisory guidelines

21    and impose a sentence that is more severe or less severe than the

22    sentence called for by the guidelines?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Do you understand that in determining your

25    sentence, the Court is obligated to calculate the applicable

1    sentencing guideline range, and to consider that range, possible

2    departures under the guidelines, and other sentencing factors

3    under 18 U. S. C. Section 3553(a)?

4                 THE DEFENDANT:  Yes, Your Honor.

5                 THE COURT:  Do you understand that parole has been

6    abolished and, if you're sentenced to prison, you will not be

7    released on parole?

8                 THE DEFENDANT:  Yes, Your Honor.

9                 THE COURT:  Do you understand, if the Court accepts

10   your plea of guilty and the sentence is more severe than you had

11   hoped for or expected, you will still be bound by your guilty

12   plea and would have no right to withdraw it?

13                THE DEFENDANT:  Yes, Your Honor.

14                THE COURT:  All right.  Just to -- just so we're clear

15   for the record, this is a misdemeanor, and we don't need to do a

16   waiver of indictment; is that correct?

17                MS. ROBINSON:  That is correct, Your Honor.

18                MR. WRIGHT:  I agree, Your Honor.

19                THE COURT:  All right.  Very well.  I do, as well.

20       All right.  Next, Mr. Burdette, I want to talk with you

21   regarding your trial and constitutional rights.

22       You have the right to plead not guilty and maintain a not

23   guilty plea throughout these proceedings, including at trial.

24       You have the right to be represented by counsel.

25       You have the right to a speedy and public trial by a jury

1   composed of citizens of this district.

2       You have the right to confront and have your attorney cross

3   examine witnesses and have your attorney move to suppress any

4   evidence she believes was illegally or unconstitutionally

5   obtained.

6       You have the right not to testify or otherwise incriminate

7   yourself;

8       And your exercise of this right cannot be held against you.

9       Do you understand all of these so far?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  You have the right to have the government

12  prove its case beyond a reasonable doubt.

13      The jury's verdict would have to be unanimous.

14      You have the right present evidence on your own behalf.

15      You have the right to testify on your own behalf at trial;

16      And you have the right to subpoena witnesses to testify for

17  you.

18      Do you understand all of these rights?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Any of them that you don't understand or

21  that you have questions about?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Other than your right to counsel, do you

24  understand that you will be giving up all of these rights by

25  entering a plea of guilty?

```
1               THE DEFENDANT:  Yes, Your Honor.
2               THE COURT:  Do you understand that once you've entered
3      a plea of guilty, there's not going to be any trial, no jury
4      verdict, and no findings of innocence or guilt based on disputed
5      evidence presented to me or to a jury?
6               THE DEFENDANT:  Yes, Your Honor.
7               THE COURT:  And I know that you haven't asserted such a
8      claim but, just for the record, do you understand that by
9      pleading guilty, you'll be waiving any argument that the U. S.
10     Attorney's Office in this case should be disqualified?
11              THE DEFENDANT:  Yes, Your Honor?
12              THE COURT:  All right.  Do you believe that you fully
13     understand the consequences of entering a plea of guilty?
14              THE DEFENDANT:  Yes, Your Honor.
15              THE COURT:  And, Ms. Robinson, having reviewed this
16     case and the plea agreement in detail with your client, do you
17     believe that he fully understands his rights and fully
18     understands the consequences of entering a plea of guilty?
19              MS. ROBINSON:  Yes, Your Honor, I do.
20              THE COURT:  All right.  I note that we have a detailed
21     Stipulation of Facts.  Is there any objection to the Court
22     utilizing the stipulation in its consideration for the factual
23     basis for the plea?
24              MR. WRIGHT:  No, Your Honor.
25              MS. ROBINSON:  Not from the defendant, Your Honor.
```

1          THE COURT:  All right.  Very well.

2      Mr. Burdette, will you please stand?

3      As to the charge contained in the single-count information,

4  how do you plead, sir, guilty or not guilty?

5          THE DEFENDANT:  I plead guilty.

6          THE COURT:  You may be seated.

7      Your counsel has been provided with a written plea of guilty

8  form.  I would ask that you go over that with her, if necessary,

9  sign and date it.  Then I will ask her to sign it and tender it

10  to the Court.

11          MS. ROBINSON:  May I approach, Your Honor?

12          THE COURT:  You may.

13      All right.  I will note for the record that the defendant

14  has signed and dated the written plea of guilty form, it has been

15  witnessed by his counsel, and I will order that it be made a part

16  of the record for this proceeding.

17      Mr. Burdette, is this plea the result of any threat, or

18  coercion, or harassment of you by anyone?

19          THE DEFENDANT:  No, your honor.

20          THE COURT:  Is it the result of any promise or

21  inducement other than those contained in the plea agreement?

22          THE DEFENDANT:  Excuse me?

23          THE COURT:  Is the plea the result of any promise or

24  other inducement other than what's contained in the plea

25  agreement?

```
 1                    THE DEFENDANT:  No, Your Honor.

 2                    THE COURT:  Are you pleading guilty to protect anyone?

 3                    THE DEFENDANT:  No, Your Honor.

 4                    THE COURT:  Are you acting voluntarily and of your own

 5      free will in entering this guilty plea?

 6                    THE DEFENDANT:  Yes, Your Honor.

 7                    THE COURT:  Has anyone promised or predicted the exact

 8      sentence which will be imposed in this case?

 9                    THE DEFENDANT:  No, Your Honor.

10                    THE COURT:  Do you understand that no one could know at

11      this time the exact sentence which will be imposed?

12           Do you understand that no one could know at this time the

13      exact sentence which will be imposed in your case?

14                    THE DEFENDANT:  Yes, I do.  Yes.  Sorry.

15                    THE COURT:  Do you understand that?

16                    THE DEFENDANT:  Yes, I understand that.

17                    THE COURT:  All right.  Has your attorney adequately

18      represented you in this matter?

19                    THE DEFENDANT:  Yes, Your Honor.

20                    THE COURT:  Has your attorney left anything undone

21      which you think should have been done?

22                    THE DEFENDANT:  No, Your Honor.

23                    THE COURT:  Have you or your attorney found any defense

24      to the charge contained in the information?

25                    THE DEFENDANT:  No, Your Honor.
```

 1          THE COURT:  Are you, in fact, guilty of the crime

 2     charged in the information?  In other words, did you do it?

 3          THE DEFENDANT:  Yes, Your Honor.

 4          THE COURT:  All right.  I will find that the defendant

 5     is competent and capable of entering an informed plea; that the

 6     plea is freely and voluntarily made; that the defendant

 7     understands the nature of the charges and is aware of the

 8     sequences of the plea.

 9        I will find that the defendant understands his rights and

10     understands that he is giving up these rights by entering a plea

11     of guilty.

12        I will defer a factual basis finding, but I will accept the

13     plea of guilty to the information, and will defer adjudging the

14     defendant guilty until the time of sentencing.

15        I will ask the probation officer to prepare a Presentence

16     Investigation Report.

17        Mr. Burdette, it is important that you cooperate fully with

18     the probation officer in the preparation of the Presentence

19     Report.  If you fail to cooperate fully and truthfully with the

20     probation officer, you may be subject to an enhancement of your

21     sentence or the forfeiture of certain sentence reductions for

22     which you might otherwise be eligible.

23        It is also important that you not commit any additional

24     crimes between now and sentencing, as there may be additional

25     punishments imposed for committing additional crime.

1          I'm going to set this matter for sentencing on June 24th,

2     2015 at 10:00 a.m.  I will put the other presentence dates in my

3     post-plea order.

4          What is the government's position with regard to bond?

5          MR. WRIGHT:  Your Honor, we agree with the assessment

6     of the probation officer and a $10,000.00 unsecured bond would be

7     sufficient.

8          THE COURT:  Is there any objection to that?

9          MS. ROBINSON:  There is not, Your Honor, and we've

10    asked for some exceptions to the travel restriction to the

11    Southern District of West Virginia based upon his employment and

12    his work travel, which I believe are contained in the Pretrial

13    Services Report recommendations.

14         THE COURT:  What are the specifics of that?

15         MS. ROBINSON:  Mr. Burdette's employment is in Ironton,

16    Ohio.  The company that he works for is also developing business

17    in the States of Georgia and in Florida and we would request that

18    he be permitted to travel for work purposes.

19         THE COURT:  Is there any objection to that?

20         MR. WRIGHT:  No, Your Honor.

21         THE COURT:  All right.  I will allow that.  I'm not

22    sure that, given what you've described, that we need to

23    necessarily modify the conditions, but I will allow him travel,

24    as long as -- I will allow him that travel, as long as he

25    notifies the probation officer in advance of the travel.

1        I guess what -- is his place of employment in Ironton, Ohio?

2            MS. ROBINSON:  Yes.  It would be in the Southern

3    District of -- I haven't double checked if that's in the Southern

4    District, but --

5            THE COURT:  It is.

6            MS. ROBINSON:  His daily place of employment is in the

7    Southern District of Ohio.

8            THE COURT:  Well, I will -- I think what I will do

9    then, is I will modify the conditions to allow him to travel to

10   Ironton, Ohio and the Southern District of Ohio for employment.

11       If he has to travel beyond the Tri-State area for work, I'll

12   just ask that he notify the probation officer in advance of his

13   travel plans.

14       All right.  Anything else we need to take up?

15       I have signed my part of the bond papers, but I think we're

16   going to need to add the Southern District of Ohio, but we can

17   take care of that after the hearing.  You will just need to see

18   the deputy clerk about that.

19       Anything else we need to take up today?

20           MR. WRIGHT:  No, Your Honor.

21           MS. ROBINSON:  No, Your Honor.

22       (Proceedings concluded at 10:41 a.m., March 18, 2015.)

23

24

25

```
 1   CERTIFICATION:

 2        I, Ayme A. Cochran, Official Court Reporter, certify that

 3   the foregoing is a correct transcript from the record of

 4   proceedings in the matter of United States of America, Plaintiff

 5   v. Michael Burdette, Defendant, Criminal Action No.

 6   2:14-cr-00276, as reported on March 18, 2015.

 7

 8   s/Ayme A. Cochran, RMR, CRR                    April 29, 2015

 9   Ayme A. Cochran, RMR, CRR                           DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```