```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                       AT CHARLESTON

_____x
                              :
UNITED STATES OF AMERICA,      :          Criminal Action
                              :
              Plaintiff,       :          No.  2:14-CR-00276-1
                              :
v.                             :
                              :          Date: February 4, 2016
MICHAEL E. BURDETTE,           :
                              :
              Defendant.       :
_____x


              TRANSCRIPT OF SENTENCING HEARING HELD
         BEFORE THE HONORABLE THOMAS E. JOHNSTON, JUDGE
                 UNITED STATES DISTRICT COURT
                  IN CHARLESTON, WEST VIRGINIA

APPEARANCES:

For the Government:          AUSA PHILIP H. WRIGHT
                            AUSA ERIC P. BACAJ
                            U.S. Attorney's Office
                            P.O. Box 1713
                            Charleston, WV  25326-1713

For the Defendant:           SUSAN M. ROBINSON, ESQ.
                            Thomas Combs & Spann
                            P. O. Box 3824
                            Charleston, WV 25338-3824

Probation Officer:          Matthew Lambert


Court Reporter:             Ayme Cochran, RMR, CRR

Proceedings recorded by mechanical stenography;
transcript produced by computer.
```

1          PROCEEDINGS had before The Honorable Thomas E. Johnston,

2    Judge, United States District Court, Southern District of West

3    Virginia, in Charleston, West Virginia, on February 4, 2016, at

4    2:35 p.m., as follows:

5          COURTROOM DEPUTY CLERK:  The matter before the Court is

6    the United States of America versus Michael Burdette, criminal

7    action number 2:14-cr-00276, scheduled for sentencing.

8          THE COURT:  Good afternoon.  Will counsel please note

9    their appearances?

10          MR. WRIGHT:  Good afternoon, Your Honor.  Philip Wright

11   and Eric Bacaj on behalf of the United States.

12          MS. ROBINSON:  Susan Robinson on behalf of the

13   defendant, Michael Burdette, who is present in court, Your Honor.

14          THE COURT:  Good afternoon.

15      Mr. Burdette, will you please stand, and I will ask the

16   deputy clerk to administer an oath to you at this time.

17          COURTROOM DEPUTY CLERK:  Please raise your right hand.

18          **MICHAEL BURDETTE, DEFENDANT, SWORN**

19          THE COURT:  You may be seated.

20      Mr. Burdette, do you understand that you are now under oath

21   and you must tell the truth and, if you testify falsely, you may

22   face prosecution for perjury or for making a false statement?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  You may remain seated unless I indicate

25   otherwise.  You might just want to pull that microphone a little

1    closer to you there.

2        Throughout the course of this hearing, if there's anything

3    that occurs that you don't understand, I want you to feel free to

4    speak up and seek clarification.

5        Also, if at any time you need to confer with your attorney,

6    I'll be pleased to pause the proceedings to allow you to do so.

7        Do you understand all that?

8            THE DEFENDANT:  Yes, Your Honor.

9            THE COURT:  Ms. Robinson, have you received and read

10   and reviewed with your client the most recent edition of the

11   Presentence Report?  The financial information was modified

12   slightly here in the last day or so.

13           MS. ROBINSON:  Yes, Your Honor.  We've received the

14   Presentence Report, and both addendums, and I've reviewed both of

15   them with my client.

16           THE COURT:  All right.  Very well.

17       Just so I'm clear, Mr. Lambert, the change you made in the

18   defendant's financial calculation was basically a math change.

19   The assets and liabilities remain the same, but the net worth

20   calculation -- the net worth itself changed slightly; is that

21   correct?

22           PROBATION OFFICER LAMBERT:  That's correct, Your Honor.

23           THE COURT:  All right.  Very well.

24       Mr. Burdette, have you received and read and reviewed with

25   your counsel a copy of the most recent edition of the Presentence

```
1    Report?
2                THE DEFENDANT:  Yes, Your Honor.
3                THE COURT:  Has the Government received and reviewed a
4    copy of the report?
5                MR. WRIGHT:  Yes, Your Honor.
6                THE COURT:  All right.  Ms. Robinson, do you have any
7    live objections remaining?
8                MS. ROBINSON:  No, Your Honor.
9                THE COURT:  All right.  The ones that were asserted
10   then, I will view then as either withdrawn or moot.
11      The parties have responded with regard to the issue of
12   sealing materials.  I think the only real issue was the
13   sentencing memo.  Has that been changed now in the record?  Has a
14   new sentencing memo been filed?
15               MS. ROBINSON:  Yes.  A redacted version of the
16   sentencing memorandum, as well as a redacted version of the
17   letters that were sent to the Court on behalf of Mr. Burdette,
18   have been filed as of yesterday and are public record.
19               THE COURT:  And the medical records remain sealed?
20               MS. ROBINSON:  Correct.  And all other exhibits were
21   unsealed following the Court's order.
22               THE COURT:  All right.  Very well.
23      Are we all squared away on sealed documents in this case?
24               MR. WRIGHT:  Yes, Your Honor.
25               THE COURT:  As far as we know?
```

```
 1              MS. ROBINSON:  Yes, Your Honor.

 2              THE COURT:  All right.  Very well.

 3         All right.  Then, subject to the addenda -- oh, and, as I've

 4    indicated in prior hearings, I'm going to apply a plus-four for

 5    the discharge, instead of a plus-six.  That is without prejudice

 6    to the Government arguing that point in subsequent defendants'

 7    hearings, but that's how I'm going to apply it today.  So, I will

 8    ask the probation officer to prepare an addendum to the

 9    Presentence Report reflecting that.  Subject to that, I will

10    adopt the Presentence Report.

11         I would note that I did receive a sentencing memorandum from

12    the defendant.  That included several attachments with regard to

13    -- I read the letters and they're already in the record.  Those

14    are attached, as well.  They're already in the record, as

15    redacted.  I would note that there were several pages of medical

16    records.  I didn't read through all of those because it got

17    pretty technical, but I did read the letter and I understand the

18    general import of that information.

19         Also, I would note for the record that some materials were

20    submitted from potential victims and were included in the docket

21    -- on the docket of Mr. Reynold's sentencing hearing and case --

22    and, unless somebody sees some reason to do so, I don't intend to

23    put them on the docket of this case.  Is there any objection to

24    that?

25              MR. WRIGHT:  No, Your Honor.
```

1          MS. ROBINSON:  No, Your Honor.

2          THE COURT:  All right.  And, while I'm thinking about

3     it, Mr. Wright, so I don't do like I did in the last hearing and

4     forget, I'll ask you now, have the -- with regard to any

5     potential victims, have their rights and notifications been

6     afforded to them under the victims rights statutes and

7     regulations?

8          MR. WRIGHT:  Yes, Your Honor.  And, as I indicated in

9     the hearing that we just concluded, but for the record in this

10    case, I did receive a notification from a Maya Nye, who asked

11    that the letters that she has previously submitted to the Court

12    be read in open court so that the defendants could hear it, and

13    I'm passing on that request.  As far as I know, Ms. Nye is not in

14    the courtroom and no one has notified me that they would like to

15    speak to the Court.

16         THE COURT:  Very well.  And I will turn that request

17    down.  It's noted, but I will turn that request down for the

18    reasons I've previously stated.

19         Thank you, Mr. Wright.

20         On March 18th, 2015, the defendant appeared before this

21    Court and entered a plea of guilty to a single-count information

22    charging him with negligent discharge of a pollutant in violation

23    of 33 U. S. C. 1319(c)(1)(A) and 1311.  I deferred a factual

24    basis finding at that time.

25         The one thing I want to note for the record, and I mentioned

 1    this very topic in the Reynolds sentencing hearing and, Ms.

 2    Robinson, I note, was here for that proceeding, and that has to

 3    do with causation.  The -- as I have read through these reports,

 4    I have learned that -- well, and I'll talk about this more later.

 5    This defendant, in particular, was seeking repairs to the dike

 6    wall, but I would note, and this is really, I think, the

 7    foundation of this -- to me, this is the foundation of this

 8    prosecution in this particular case, he went about that the wrong

 9    way.  He should have followed the permit, should have put into

10    place, or directed that -- or led the effort to put into place a

11    Stormwater Protection Plan and a Groundwater -- I'm sorry, a

12    Stormwater Pollution Prevention Plan and a Groundwater Protection

13    Plan.  Had that occurred, there would have been a number of

14    things that would have been formalized and made a part of the

15    workplace and the operation of the company, including

16    inspections, training, a committee, all of which would likely

17    have generated documentation.

18        The record indicates -- the Presentence Report indicates that

19    this defendant requested at least some repairs to the dike wall

20    and that never came about from higher-ups in management, but I

21    believe that if those -- if the plans had been put into place, it

22    would have, within the institution of the company, made a much

23    stronger case, maybe an overwhelming case for the repairs to be

24    made, especially given that if you're going to inspect this

25    thing, it's going to create documents, and evidence, and I think

1    pressure to bring about these repairs.

2        I don't -- I think it's impossible, since none of this ever

3    happened, to know for sure that it's inevitable that those

4    repairs would have been made if this had been followed, but I

5    think it would have been much more likely, and we know the result

6    without the plans -- nothing happened, and this incident

7    occurred.  So, that is -- in recognition that this defendant did

8    not have full control of the pursestrings; but, nonetheless,

9    there's much he could have done to bring back -- to bring about

10   the repairs that were necessary, and I think it is much more

11   likely that would have occurred if this defendant had followed

12   the permit and made sure that he did everything he could to put

13   these plans in place and carry them out as far as he possibly

14   could.

15       So, is there any -- those are the inferences I draw from all

16   of this.  Is there any objection to that, Ms. Robinson?

17           MS. ROBINSON:  No, Your Honor, there's not.  In fact,

18   it's much like my analysis as I was considering the facts and

19   evidence in this case and advising my client.

20           THE COURT:  And, Mr. Burdette, do you agree with what

21   I've said?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  All right.  Very well.  Based on that then,

24   I will find a factual basis, and I will adjudge the defendant

25   guilty of the crime to which he has pled guilty, and will accept

1    the plea agreement that was previously filed.

2         Next, I note, Mr. Wright, that you have indicated that you

3    intend to make a motion pursuant to 5K1.1.  You have, as has been

4    your custom in these cases, provided my chambers with a

5    memorandum in support of such a motion, but have not filed it on

6    the docket.  I will first ask, is there any reason for us to hear

7    that motion in-camera?

8              MR. WRIGHT:  No, Your Honor.

9              THE COURT:  And is there any reason not to go ahead

10   then and place that memorandum on the docket?

11             MR. WRIGHT:  No, Your Honor.

12             THE COURT:  All right.  Is there any objection to that?

13             MS. ROBINSON:  No, Your Honor.

14             THE COURT:  All right.  That will be so ordered.

15        I have read that memorandum, Mr. Wright, but I will -- well,

16   let me go ahead and do this.  I will lay out the standard and

17   then I'll let you make your motion and any comments that you

18   have.

19        Pursuant to 5K1.1 of the sentencing guidelines, the Court

20   may depart from the guidelines upon motion of the Government

21   stating that the defendant has provided substantial assistance in

22   the investigation and prosecution of another person.

23        In determining the appropriate reduction, the Court may

24   consider the significance and usefulness of the defendant's

25   assistance; the truthful, completeness, and reliability of any

1    information or testimony provided by the defendant; the nature

2    and extent of the defendant's assistance; any injuries suffered

3    or any danger or risk of injury to the defendant or his family

4    resulting from his assistance; and the timeliness of the

5    defendant's assistance.

6        Give me just a moment, please.

7        (Pause.)

8            THE COURT:  All right.  Mr. Wright, I'll hear from you

9    now.

10           MR. WRIGHT:  Your Honor, as so indicated in that

11   memorandum, we do hereby file a motion pursuant to Section 5K1.1

12   of the sentencing guidelines to reflect the substantial

13   assistance that Mr. Burdette provided.  I won't go through every

14   single one of those in detail, but I will say that his assistance

15   was significant.

16       And, if it's not plainly stated in that memorandum, I will

17   state that he was the most helpful cooperator that we had.  He

18   participated in a lengthy debriefing session, provided testimony,

19   and made himself available on short notice to answer questions.

20       Significantly, he also provided us with records, his notes

21   that he took that were more or less a daily log of his activities

22   that provided us key insights, corroborated much of the

23   information that he gave to us and, indeed, we would have

24   attempted to introduce some of those notes as exhibits.

25       He was the second defendant to agree to cooperate and was,

1   thus, I would say, very helpful, almost critical to our remaining

2   charges against the remaining defendants with the indictment that

3   followed within a month and a half of his first agreeing to sign

4   the plea agreement, and it is for those reasons, and the reasons

5   that I have stated in the memo, that the United States recommends

6   that the Court depart from the guideline offense level, which we

7   believe is 12 months in this case, or sentence, the guideline

8   sentence, to Level 8 in the sentencing guideline range.

9           THE COURT:  All right.  I will adopt -- well, Ms.

10  Robinson, do you have anything to add?

11          MS. ROBINSON:  No, Your Honor.

12          THE COURT:  I will adopt the comments of the Government

13  both in their written and oral presentation.

14      I would note that, in reading this file, it's obvious that

15  the defendant is a note taker and took very detailed notes of

16  what was happening on a regular basis, and I can imagine how

17  helpful that was to the Government.  That's not something that

18  comes along every day in every case, and I can imagine that that

19  would have been extremely helpful to understanding the case, and

20  understanding what happened, and building the case as the

21  prosecution went forward.  So, I will grant the motion and depart

22  down to a Level 8 as has -- as the Government has suggested in

23  the motion.

24      I'm now ready to give my tentative findings as to the

25  applicable guidelines.

1          First, Mr. Wright, is there a motion for the third level for

2     acceptance of responsibility?

3               MR. WRIGHT:  There is, Your Honor.

4               THE COURT:  The motion will be granted.  Therefore, I

5     find a Base Offense Level of VI; plus 4 for the discharge; plus 4

6     for the disruption of public utility; plus 4 for discharge in

7     violation of permit, for an Adjusted Offense Level of 18, minus 3

8     for acceptance of responsibility, for a Total Offense Level of

9     15; a Criminal History Category of I based on 0 criminal history

10    points, otherwise yielding an imprisonment range of 18 to

11    24 months, but that is capped at 12 months because of the

12    statutory maximum and, therefore, that is the guideline range.

13         Then, with regard -- after the application of the 5K

14    reduction, I find a Total Offense Level of 8, a Criminal History

15    Category of I, yielding an imprisonment range of 0 to 6 months,

16    which is in Zone A, which allows for straight probation; 1 to

17    5 years of probation; 1 year of supervised release, if

18    imprisonment were imposed; and a fine range of $2,500.00 to

19    $100,000.00; and a mandatory special assessment of $2,500 -- or

20    $25.00.  $25.00, which I note has already been paid.

21         Is that correct, Ms. Robinson?

22               MS. ROBINSON:  That is correct, Your Honor.

23               THE COURT:  All right.  And no restitution.

24         Is there any legal objections to my tentative findings as to

25    the applicable guidelines?

1              MR. WRIGHT:  No, Your Honor.

2              MS. ROBINSON:  No, Your Honor.

3              THE COURT:  All right.  Mr. Burdette, at this time, the

4    Federal Rules of Criminal Procedure give you the right to make

5    any statement that you would like to make, although you're not

6    obligated to make any statement.  However, if you do choose to

7    make a statement, I would ask that you stand to do so.

8          You may want to pull that up.  Yeah, there you go.

9              THE DEFENDANT:  Thank you, Your Honor.  I would first

10   like to apologize to the citizens of West Virginia, to my family

11   and friends, and to all those affected by the Freedom spill.

12         From the beginning of my employment with Freedom Industries,

13   I tried to bring my experience with capital projects and

14   maintenance programs to the corporation to help them maintain

15   their facilities in a reliable manner.  When I later took the

16   position of the plant manager, I did not fully appreciate the

17   environmental compliance and regulatory issues and I take

18   responsibility for my role in not -- in failing to see that the

19   company was in full compliance with those permits.

20         I was very excited when Freedom Industries was purchased by

21   Roosevelt Mining, as the projects that I had on the books for

22   years were finally going to be implemented, but everything

23   changed on January the 9th of 2014, and my focus changed from

24   future projects to working with various state and federal

25   agencies and contractors through the bankruptcy CRO to ensure

1    that the remediation work and containment of site stormwater

2    occurred in a safe and deliberate manner.  I worked countless

3    hours until July of 2014 to address the issues.  I was born in

4    South Charleston, West Virginia, and my family and friends live

5    downstream of this event, and I did what I could do to help bring

6    this event to a successful conclusion.

7         Thank you, Your Honor, for allowing me to speak before the

8    Court, and the people of West Virginia, and my family and

9    friends, as well.

10        I have learned some valuable life lessons at a significant

11   personal cost and, while I do not know what the future holds, I

12   know that I will never work for a company that does not put

13   people, the environment, and the assets above profits.  Thank

14   you.

15        THE COURT:  Thank you, sir.  You may be seated.

16        Ms. Robinson, anything else to add on behalf of the

17   defendant?

18        MS. ROBINSON:  Your Honor, I know the Court has

19   received letters from Mr. Burdette's colleagues, as well as his

20   family members.  I began representing him within a week or two of

21   the Freedom spill and, over the last two years, I've come to find

22   everything that's been said in those letters to the Court about

23   Mike's character to be true.  He's been unfailingly honest with

24   me.  He has demonstrated -- and, from everything I've learned, he

25   has been a hard worker his entire life.  He has been diligent.

1    He's earned the respect of everyone that he's worked with.

2        Unfortunately, he did accept a position without having

3    clearly defined responsibilities with a company that wasn't --

4    you know, wasn't operated appropriately in compliance with the

5    environmental laws, and he did so without full appreciation of

6    his responsibility to comply with the environmental regulations

7    and to ensure that the plant was in full compliance.  I don't

8    have any doubt in my mind that Mike, had he opened up the files,

9    had he appreciated what his role was, that he would have done

10    everything within his power to see that the plant was in

11    compliance.

12        As it was, he, from his engineering background and from his

13    standpoint of a responsible -- a responsible operator of a

14    facility and a plant manager, did what he could to have repairs

15    made where there could be repairs made within the financial

16    ability and constraints that were imposed upon him by the

17    company.  This is not a crime that Mike committed for profit.  He

18    had no motive to save costs for the company.  And none of his

19    actions or inactions were governed by that type of motivation on

20    his part.

21        As Mr. Wright has said, he has provided -- you know, since

22    that time, he worked hard to help with the remediation project.

23    He came in early, pled guilty to an information.  He has provided

24    Mr. Wright with the notes and records that he kept throughout his

25    entire career that he continued to keep during Freedom and, you

1    know, those notes and records, if you read them, they will not

2    show you an individual who is trying to hide activities or what

3    was being done.  He wrote down everything that was being done.

4        His crime was one of omission.  It's a serious crime, and he

5    recognizes that, but he's done what he can to help the

6    Government.  He has been instrumental.  I mean, if you read the

7    pleadings that the Government filed shortly after he came in, you

8    could tell that the indictment was crafted a lot on what Mr.

9    Burdette had to say.

10       He's been financially devastated by the spill.  He does not

11   have a job.  He's not employed.  Perhaps the stigma of even

12   working for Freedom during this crisis will prevent him from

13   obtaining employment in his field here in the State of West

14   Virginia.

15       You know, his age, his health, all of those factors are

16   factors that, you know, I hope the Court will fully take into

17   consideration in imposing sentence, and I would ask that the

18   Court, given his role, he's not an owner of this company.  He

19   didn't have a financial motive.  He came in.  He cooperated.

20   He's done what he can do.  Given his role, I would ask the Court

21   to impose a minimum fine, due to his financial resources, as well

22   as a minimum term of probation.  Thank you.

23           THE COURT:  Mr. Wright?

24           MR. WRIGHT:  Your Honor, Mr. Burdette is charged with

25   and he has pled guilty to negligence.  We have no evidence to

1    believe that he knowingly -- or any of the individual defendants

2    knowingly and intentionally violated any environmental law.  It

3    was, nonetheless, an offense with great consequences, causing a

4    significant public disruption.  That gravity, the gravity of that

5    offense, must, of course, be balanced against or by his

6    cooperation and assistance which, as I indicated to the Court,

7    was very, very significant; in fact, critical.  So, weighing

8    those factors, Your Honor, it is our position that a sentence

9    imposed in accordance with the statute and pursuant to a

10   Guideline Level 8 would be appropriate.

11           THE COURT:  Thank you, Mr. Wright.

12      I'm going to take a brief break to review my notes and I'll

13   be back to impose sentence.

14      (Recess taken.)

15           THE COURT:  All right.  After consideration of the

16   advisory guidelines and the other applicable factors under

17   Section 3553(a), I am now ready to impose sentence.

18      Will the defendant please stand?

19      Mr. Burdette, to be sure, the "Water Crisis", as it has come

20   to be known, was a traumatic event for the communities in the

21   area whose water service was impacted.  It was appalling to think

22   that such a contamination of something so basic, yet essential as

23   drinking water, could happen in this day and age with all the

24   environmental regulation and awareness that now exists.

25      This event, now two years past, clearly had a disruptive

effect on people's lives and, perhaps worse yet, on their trust in the safety of the water coming from their taps.

But the crisis passed.  We have no reason to believe that problems related to the Water Crisis linger in our taps, and I have no evidence before me that MCHM, while perhaps an immediate irritant, represents a long-term health threat to anyone.

As I've said before, I've struggled with the sentencing decision in these cases as much or more than I have in any other case.  There are multiple facets of these cases that tend to pull the sentencing decisions in different directions.

While there's no doubt that causing a discharge of a pollutant chemical into the water supply is a serious, a very serious offense requiring a just punishment, I cannot ignore the fact that these charges for all the individual defendants, including you, are misdemeanors and not based upon intentional conduct but, at most, negligence -- carelessness, in layman's terms.  This is a major consideration in these sentencing decisions, including yours.

We handle few misdemeanors in federal court.  Of the hundreds of criminal cases over which I've presided in nearly ten years, I would guess that less than ten have been misdemeanors before now.  Of those, I can only recall one, a political corruption case with no 5K motion, in which I gave prison time.

In the eyes of the legal system, a misdemeanor charge limits the seriousness of the crime and must necessarily limit the

1    punishment, as well.  The federal sentencing guidelines recognize

2    this distinction specifically in relation to these very crimes.

3    The guideline calculation which governs these cases is based by

4    the explicit terms of the guidelines themselves on knowing and,

5    therefore, intentional misconduct.

6         If the evidence, the evidence, and charges against these

7    defendants had reflected intentional misconduct, they would

8    likely be facing relatively lengthy prison terms the guidelines

9    would otherwise call for.  However, since they're misdemeanors

10   and not based on knowing conduct, the guidelines suggest a

11   downward departure.  The problem for me is they don't recommend

12   how much of a departure should be considered.  Thus, the

13   guidelines are of little use in fashioning a sentence in this

14   case.

15        It's likewise difficult to find information on prior

16   sentencings in Clean Water Act and Refuse Act misdemeanor cases

17   to use as a starting point for a sentencing decision; although, I

18   will say, your counsel helpfully pointed out statistics from the

19   United States Sentencing Commission which showed that nationwide,

20   a large percentage of environmental cases get probation.  These

21   statistics make no distinction between felonies and misdemeanors,

22   so they can be read to include both, which suggests the

23   percentage of probation for misdemeanors would be even higher.

24        You're hardly a criminal.  You have no criminal history and

25   you've been a working engineer most of your life.  You do not

1    possess -- you don't pose a further threat to the public and I

2    find little need to deter you from further crime with this

3    sentence.

4          Of course, deterrence of others is also a very important

5    consideration.  The threat not only of prosecution itself, but

6    resulting damage to reputation, large bills from lawyers, and the

7    anxiety of facing justice before a judge means that the fact of

8    these prosecutions alone will likely have a significant deterrent

9    effect.  Potential polluters should take note of what happens

10   even when you just turn a blind eye to environmental problems,

11   not to mention polluting intentionally.  Thus, the efforts of the

12   Government and the investigative agencies in these cases have

13   already created a deterrent to this sort of conduct.

14         Now, I do note your cooperation, which Mr. Wright has

15   indicated was perhaps the most significant cooperation in the

16   entire case.  The -- I can't underscore the importance of sending

17   a deterrent message to those who are involved in industries that

18   handle chemicals like this that they need to follow the permits

19   and they need to make sure that their facilities are safe, not

20   only for their workers, but also for the environment.

21         Now, there are two major factors that make your case

22   different from the other defendants.  First of all, after

23   considering and debating your role in this incident and in

24   Freedom, I've concluded that you're probably the least culpable

25   defendant of all.  The Government may not agree with that, but

1    that's my determination.

2         There's no dispute that you tried to get the containment

3    dike wall fixed and the higher-ups in the company wouldn't

4    approve the dollars for it.  The problem with that was you went

5    about it the wrong way.  You should have followed the permit and

6    you should have ensured that the Stormwater Pollution Prevention

7    Plan and Groundwater Pollution Plan were in place, that there

8    were inspections, that there was some training, that there was a

9    committee, and done all you could through that process to try to

10   get -- to try to get these things fixed and to generate the

11   documentation that would support that effort and that would have

12   made a stronger case for you to make to the owners to fix the

13   walls, maybe an overwhelming case, and, certainly, as I

14   indicated, would have made it much less likely that this would

15   have happened, but I do note the fact that you at least tried to

16   get some of these repairs done.

17        The second thing that makes your case different from all the

18   others is that you are not a wealthy person.  At this point, you

19   are a 61-year-old out-of-work engineer who worked for Freedom

20   Industries.  That can't help.  But, frankly, the bigger problem

21   is that being out of work at your age, in this state, at this

22   time, when most of your experience is with the coal industry and

23   allied industries, is a tough situation, and that's in addition

24   to having some medical issues.

25        You don't have a large net worth, nearly as large a net

1    worth as any of the other defendants.  You have some modest

2    retirement savings, but it looks to me from your financial

3    profile, like you are -- you have a negative monthly cash flow

4    which probably has you eating into your retirement savings, so

5    that makes you different from the other defendants in these cases

6    to me, as well.

7        I know you have a college degree and you've had some pretty

8    good engineering jobs at times, but it seems to me that your

9    collar is a just little bit bluer.  So, based on all of those

10   considerations, it is the judgment of this Court that you be

11   sentenced to 3 years of probation.

12       While on probation, you must not commit another federal,

13   state or local crime; you must not unlawfully possess a

14   controlled substance; and you must also comply with the standard

15   terms and conditions of probation as recommended by the U. S.

16   Sentencing Commission and as adopted by this Court, including the

17   -- except that you need not participate in a program of testing,

18   counseling and treatment for drug and alcohol abuse, as that does

19   not appear to be implicated in your case.

20       You must also abide by the special conditions of probation

21   as set forth in the local rules of this Court.

22       I am going to impose a fine of $2,500.00, which is the

23   statutory minimum.  In connection with that, I will add the

24   following special conditions of probation:

25       That you shall be required to provide the Probation Office

1    access to any requested financial information; and that you shall

2    pay all monies received from income tax refunds, lottery

3    winnings, judgments, and any other anticipated or unanticipated

4    financial gains to the fine obligation.

5        I will make that fine due immediately, but we can talk in a

6    moment about whether or not we need to put that on a schedule.

7    I'm not going to impose interest on the fine.  And I note that

8    you've already paid the special assessment, so you may be seated.

9        Ms. Robinson, does the defendant wish a payment schedule for

10   the fine or does he want to make a lump sum payment?

11           MS. ROBINSON:  He would like to have a payment schedule

12   for the fine, Your Honor, and I would also ask the Court consider

13   dispensing with the term of probation that would require him to

14   have drug testing under the Court and --

15           THE COURT:  I did not impose that.

16           MS. ROBINSON:  Okay.

17           THE COURT:  Well, it's -- it is a mandatory condition

18   by local rule, but it's at the discretion of the probation

19   officer, and I assume that when I don't impose it as a

20   discretionary term, they know we don't need it in this case.

21           MS. ROBINSON:  Thank you, Your Honor.

22           THE COURT:  So, I'm not imposing drug testing.

23       What fine schedule, payment schedule, do you propose?

24           MS. ROBINSON:  Your Honor, I think if you could impose

25   $75.00 a month; if, at some point he can pay it off earlier, then

1    he would -- under the three-year term of probation, he would do

2    that, but with the $75.00 a month, I believe by the end of the

3    term of probation, he would be able to fully satisfy the entire

4    amount of the fine.

5              THE COURT:  Is there any objection to that?

6              MR. WRIGHT:  No, Your Honor.

7              THE COURT:  Well, if there's no objection, I will allow

8    the defendant -- I'll make it due immediately, but I will allow

9    the defendant to pay -- make monthly payments of $75.00 a month

10   and that will be a condition of probation.

11       All right.  Mr. Burdette, I note that there is a significant

12   appeal waiver contained in your plea agreement.  As qualified by

13   that waiver, you have the right to appeal the judgment of this

14   Court.  Any Notice of Appeal must be filed with the Clerk not

15   more than 14 days from the date of the entry of the judgment

16   order.

17       If you desire counsel on appeal and you are not able to

18   retain counsel, the appropriate Court will review a financial

19   affidavit filed by you to determine whether or not to appoint

20   counsel.

21       Do you understand your right to appeal and the 14-day filing

22   requirement?

23              THE DEFENDANT:  Yes, Your Honor.

24              THE COURT:  I will place the Presentence Report under

25   seal subject to counsel's right to unseal as necessary for

```
1    appeal.

2          Any other matters we need to take up in this case?

3                MR. WRIGHT:  No, Your Honor.

4                MS. ROBINSON:  No, Your Honor.  Thank you.

5                THE COURT:  All right.  Thank you.

6          (Proceedings concluded at 3:18 p.m., February 4, 2016.)

7

8    CERTIFICATION:

9          I, Ayme A. Cochran, Official Court Reporter, certify that

10   the foregoing is a correct transcript from the record of

11   proceedings in the matter of United States of America, Plaintiff

12   v. Michael E. Burdette, Defendant, Criminal Action No.

13   2:14-cr-00276-1, as reported on February 4, 2016.

14

15   s/Ayme A. Cochran, RMR, CRR                    April 5, 2016

16   Ayme A. Cochran, RMR, CRR                          DATE

17

18

19

20

21

22

23

24

25
```